UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA--SAN FRANCISCO DIVISION

| | |
|---|---|
| JAYNE SINGER, on behalf of herself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES FEDERAL CREDIT UNION dba AA CREDIT UNION; WESTERN FEDERAL CREDIT UNION and DOES 1 THROUGH 10, inclusive,<br><br>Defendants. | CASE NO. C 05-04961 JCS<br><br>[~~PROPOSED~~] ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT AND FOR ORDER DISMISSING ACTION<br><br>Date:   October 27, 2006<br>Time:  9:30 p.m.<br>Dept:  Courtroom A |

## I.   INTRODUCTION

This is a putative class action brought by plaintiff Jayne Singer in which she challenges the adequacy of certain surcharge notices at ATMs operated by American Airlines Federal Credit Union and Western Federal Credit Union at the Los Angeles International Airport. A class has not been certified. The original, named parties reached a settlement affecting Singer's individual claims only, and have filed the present motion for this Court's approval of their settlement and an order dismissing the complaint.

Under the authorities cited in the parties' papers in support of the motion, the parties submit that it is not necessary to give notice of the proposed settlement to the absent class members because their potential claims will not be prejudiced by the settlement and the settlement is not the product of collusion between Singer and defendants.

## II.   NATURE OF THE ACTION

Plaintiff Jayne Singer commenced this putative class action in the San Francisco Superior Court on July 16, 2004 against American Airlines Federal Credit Union ("American"). (Case No. 4433097.) The complaint was amended twice and then, on October 26, 2005, Singer filed a

1  Third Amended Complaint naming as a defendant, for the first time, Western Federal Credit
2  Union ("Western"). Western removed the action to Federal Court on December 1, 2005 based
3  on federal question jurisdiction. American joined in the removal.

4      Plaintiff allegedly paid a $2.50 surcharge to use one of American's Automated Teller
5  Machines in the Los Angeles International Airport on April 27, 2004. As alleged in the
6  complaint, Singer contends that the surcharge was improper because the ATM she used did not
7  have an exterior notice advising her that a surcharge would be imposed. The April 27, 2004
8  transaction is the only ATM transaction which provides the basis for plaintiff's claim in this
9  action.

10      Singer alleges that she brings the action on behalf of herself, and all others similarly
11  situated, who paid a surcharge for the use of an ATM machine owned or operated by the
12  defendants American and Western. Singer does not dispute that the ATM she used displayed a
13  screen notice that a fee would be charged, and the screen notice appeared before the user was
14  committed to proceeding with the transaction. However, she claims that the ATM did not also
15  display an exterior sign informing her of the surcharge, as she contends is required by of the
16  Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. (the "EFTA"). Singer alleges in the First
17  Cause of Action that this surcharge constitutes a violation of California Business & Professions
18  Code §17200 because it is illegal, unfair or deceptive under 15 USC 1693b(D)(3)(A) and (B) and
19  15 USC 1693b(C) of the EFTA. Singer alleges in the Second Cause of Action that the
20  "Defendants failed to post on ATM machines owned and operated by them notices required by
21  15 USC 1693b(d)(3)(A)(i)(B)(i) and accordingly imposition of any ATM fee upon the class
22  members was prohibited by 15 USC 1693b(d)(3)(C)." Complaint, ¶13.

23      Defendants deny that they are liable as alleged in the complaint, and deny that plaintiff,
24  or any putative class members, are entitled to any recovery from them in connection with the
25  matters alleged in the complaint. Defendants contend that based on the screen notice, plaintiff
26  agreed to the fee she incurred and, therefore, she has no actual damages. For that same reason,
27  defendants contend that the purported class has no standing to make a claim for damages.
28

### III.   PROCEDURAL STATUS OF CASE

The court scheduled a hearing on a motion for class certification for September 29, 2006. However, the parties reached a tentative settlement before plaintiff filed her motion for class certification. Thus, no class has been certified. Trial is scheduled to commence on April 23, 2007.

### IV.   TERMS OF SETTLEMENT

The key features of the settlement are as follows:

1. Defendants will make a payment of $30,000 (thirty thousand dollars) to the non-profit consumer group the National Consumers League for the benefit of its "Life Smarts" program[1];

2. Steps will be taken to ensure that all American ATMs have proper exterior signage advising of potential charges. The parties have agreed as follows: whenever CREDIT UNIONS' employees are escorting service and supply vendors to the CREDIT UNIONS' Automatic Teller Machines ("ATM") located at the Los Angeles International Airport, CREDIT UNIONS' employees will routinely confirm that accurate exterior notices of fees are in place on their Los Angeles International Airport ATMs. The CREDIT UNION whose employees are checking exterior notices will promptly install or replace any exterior signs that are found to be missing.

3. The defendants will pay a $1,500 "incentive fee" to Singer.

4. The defendants will pay $14,000 (fourteen thousand dollars) to Singer's counsel, Daniel Berko, for his attorney's fees for this case.

5. Singer will release all claims against defendants, known and unknown, and her complaint against defendants will be dismissed with prejudice.

---

[1] The web site for this program describes it as follows: "LifeSmarts . . . the ultimate consumer challenge is an educational opportunity that develops the consumer and marketplace knowledge and skills of teenagers in a fun way and rewards them for this knowledge. The program complements the curriculum already in place in high schools and can be used as an activity for classes, groups, clubs, and community organizations. LifeSmarts, run as a game-show style competition, is open to all teens in the U.S. in the 9th through 12th grades. Teams of four to five teens compete in district and state matches with the state winners going to the national competition to vie for the national LifeSmarts title. LifeSmarts is a program of the National Consumers League." http://www.lifesmarts.org/start/about.htm

6. The parties will not discuss the settlement with any third party, except in limited circumstances (in response to subpoena or court order, in compliance with law in the conduct of business affairs, by prior approval of the defendants, or with certain professional advisors).

7. The settlement is conditioned upon court approval thereof.

## V. STANDARD OF REVIEW

This is a settlement involving the original parties to this suit, reached before any class decision or notice has been given to class members. In this circumstance, the court is to review the settlement and proposed dismissal in order to confirm that the representative plaintiff is not receiving a disproportionate recovery and that absent class members will not suffer prejudice. If the Court makes this determination, it should approve the settlement and dismiss the action without notice. F.R.C.P. Rule 23(e); *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989).

## VI. APPROVAL OF THE SETTLEMENT WITHOUT REQUIRING NOTICE TO ABSENT CLASS MEMBERS

The parties reached this settlement after independently considering a number of factors, including: (1) the strength of the case for plaintiff on the merits, balanced against the extent of the settlement offer; (2) the complexity, length and expense of further litigation; and (3) the progress of the proceedings.

It appears that any inadequate signage at the ATMs was not fraudulently motivated or intended to gouge consumers. This is not a defense per se, but has a bearing on the equities of the situation which could affect potential damages awarded. Further, the defendants are federally-chartered credit unions which generally strive to serve consumer interests. In addition, defendants contend that based on the screen notice, plaintiff agreed to the fee she incurred and, therefore, she has no actual damages. For that same reason, defendants assert that the purported class has no standing to make a claim for damages. Moreover, defendants assert that the ATM

operations at Los Angeles International Airport have resulted in an operational loss in each year of its existence. There are no profits to be disgorged.

Further litigation will require a fight over class certification and the merits, with substantial trial attorney's fees. A controversy over whether Singer is entitled to recovery for a unintentional violation does not warrant this.

### A. There Is No Known Reliance By Absent Class Members on the Filing of the Action

Plaintiff's attorney Daniel Berko is plaintiff's sole counsel in these proceedings. Plaintiff is Mr. Berko's spouse's friend, and plaintiff contacted Mr. Berko after she used the ATM on April 27, 2004. Mr. Berko is unaware of any other specific individuals, and has not communicated with any individuals other than plaintiff, who may have a claim against defendants based on the alleged absence of surcharge notices at American ATMs. (See Berko Declaration, p.4.) Counsel for the parties are unaware of this case having been covered by any articles in the press, and are unaware of any reliance by absent class members on the filing of this lawsuit.

### B. There Is Time For Absent Class Members To File Other Actions

The complaint was filed against American on December 17, 2004 and against Western on October 26, 2005. The statute of limitations was tolled as to the class during the period that the complaint was on file. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974); *Bantolina v. Aloha Motors, Inc.* 75 F.R.D. 26, 31-33 (D. Haw. 1977) (Truth in Lending Act). The EFTA statute of limitations is one year from the date of the occurrence of the violation. 15 U.S.C. § 1693m(g). This means that American could face potential claims in connection with ATM transactions dating back to July 16, 2003—one year before the original complaint was filed against it on July 16, 2004. To the extent that Western faces liability under the Act, it would be in connection with ATM transactions dating back to October 26, 2004—one year before the Third Amended Complaint was filed on October 26, 2005.

The Unfair Practices Act (UPA) statute of limitations is four years. Cal. Bus. & Prof. Code § 17208. This means that American could face potential liability in connection with ATM

transactions dating back to July 16, 2000—four years before the original complaint was filed against it on July 16, 2004. (Actually, this is long before American had installed the subject ATMs, which began in January 2003.) To the extent that Western faces liability under the Act, it would be in connection with ATM transactions dating back to October 26, 2001—four years before the Third Amended Complaint was filed on October 26, 2005.

Based on the tolling of the statute of limitations as to the class which occurred by virtue of the filing of plaintiff's complaint, there is ample time for absent class members to commence a new action should they determine that such a case had merit.

C.  **Class Interests Are Not Being Settled or Conceded in Order to Further the Interests of Plaintiff or Her Counsel**

Plaintiff will receive a $1,500 "incentive fee" under the settlement, and Mr. Berko's attorney's fees of $14,000 will be paid. These amounts are within reasonable limits, and do not constitute a windfall, in light of the fact that the settlement: (1) includes provisions designed to ensure that the American ATMs have proper exterior notices posted; and (2) provides for a $30,000 payment to a National Consumers League youth educational program. The settlement provides cash to the named plaintiff and also provides classwide injunctive relief from the business practices alleged in the complaint. In this case, the named plaintiff's individual recovery and plaintiff's attorney's fees cannot be characterized as a windfall.

Incentive payments to named class-action plaintiffs have been approved in the Northern District of California. In one 1994 Northern District of California case, the court approved incentive awards of $500 each to eight class representatives. Each representative spent between two and five hours undergoing deposition and each responded to a few narrow discovery requests. *In re Oracle Securities Litigation*, 1994 WL 502054 (N.D. Cal. 1994.) In this case, plaintiff responded to written discovery requests before the action was removed to this Court, and she submitted to half-day deposition in San Francisco, traveling from her home in Southern California to do so. The parties believe that the $1,500 payment to plaintiff is within a range that

should be approved by the Court. Mr. Berko's attorney's fees, his time spent on the case and his current hourly billing rate are described in his accompanying declaration.[2]

### D. Notice To Class Members Is Not Warranted

The *Diaz* decision does not require notice to absent class members of a settlement between the named plaintiff and the defendants if the named plaintiff does not receive a disproportionate recovery and the class members do not suffer prejudice. Plaintiff is being paid an incentive payment of $1,500 for her participation in this action. Approving the proposed settlement at this time, without notice, will serve the public policy objective of encouraging settlement. The proposed settlement does not provide plaintiff with a disproportionate recovery and will not result in prejudice to the absent class members, who may still file suit.

### ORDER

For all of the reasons discussed above, the Court hereby finds and ORDERS: (1) that the settlement between Singer and defendants is not collusive or prejudicial; (2) the settlement is fair and reasonable, including the payment of attorney's fees to plaintiff's counsel; and (3) the Court dismisses the complaint, with Jayne Singer's individual claims being dismissed with prejudice, and the claims of absent class members being dismissed without prejudice.

IT IS SO ORDERED

DATED: October 30, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[2] Under the EFTA, an individual plaintiff who establishes liability is entitled to recover costs and reasonable attorney's fees. (See 15 U.S.C. 1693m(a)(1)-(3).)